IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GREG GRISWOLD,

Appellant,

v.

BRENDA ZEDDUN, TRUSTEE,

Appellee.

OPINION & ORDER

14-cv-718-jdp

---

GREG GRISWOLD,

Appellant.[1]

OPINION & ORDER

15-cv-250-jdp

---

Greg Griswold, Laura Wierzbicki and their three children lived on a 40-acre farm in Cross Plains, Wisconsin. The farm was originally owned by Wierzbicki, but about a year before filing for bankruptcy, Wierzbicki transferred ownership of the farm to Griswold. In an adversarial proceeding, the Bankruptcy Court for the Western District of Wisconsin granted the trustee of the bankruptcy estate's request to avoid the transfer of the farm to Griswold as constructively fraudulent. Specifically, the court concluded that Wierzbicki did not receive "reasonably equivalent value" from Griswold in exchange for giving him ownership of the farm. Griswold, appearing *pro se*, appeals that judgment. I conclude that Griswold fails to show that the bankruptcy court erred in avoiding the transfer, so I will affirm the bankruptcy court's judgment.

[1] Appellant Griswold did not name an opposing party in the caption of his second appeal, and the identity of the proper appellee is unclear given the posture of the underlying bankruptcy case, which is discussed in more detail below.

I will also address a second appeal filed by Griswold, in which he seeks interlocutory review of the bankruptcy court's denial of Griswold's motion seeking recusal of the bankruptcy judge. I will deny Griswold leave to proceed on that interlocutory appeal.

## BACKGROUND

The parties have been involved in extensive litigation in both state and federal courts. I draw the following information from the docket in this case, the dockets of Wierzbicki's bankruptcy case[2] and associated adversary proceeding,[3] and the dockets of various state court cases.[4]

Greg Griswold and Laura Ann Wierzbicki are the unmarried parents of three minor children. The property at issue is a 40-acre farm in Cross Plains, Wisconsin, originally owned by Wierzbicki. Griswold, Wierzbicki, and their children lived together on the farm for most of the time relevant to the case. I understand the dispute arises from the dissolution of Griswold and Wierzbicki's romantic and business relationships, which in addition to the farm, included a boat-salvaging operation.

In 2009, Griswold filed a lawsuit against Wierzbicki in the Dane County Circuit Court for unjust enrichment and promissory estoppel; Wierzbicki brought a counterclaim for slander of title. *See Griswold v. Wierzbicki*, No. 09CV870 (Dane Cnty. Cir. Ct.). One of the issues in the case was whether Griswold was the co-owner of the farm by virtue of a warranty

[2] *In re Wierzbicki*, No. 13-12213 (Bankr. W.D. Wis.), which I will refer to as *In re Wierzbicki*.

[3] *Zeddun v. Griswold* (*In re Wierzbicki*), Adversary Proceeding No. 13-193 (Bankr. W.D. Wis.), which I will refer to as *Zeddun*.

[4] Available at the Wisconsin Court System's online databases, http://wcca.wicourts.gov and http://wscca.wicourts.gov (both last visited Sept. 9, 2015).

deed he had acquired from Wierzbicki. The court issued a judgment on July 12, 2011, ruling that Griswold's warranty deed "was a nullity, void from its inception" and that Wierzbicki was the sole owner of the farm. Dkt. 2-2.[5] The July 22, 2011 "amended order affecting title to real estate" in that case stated that "Griswold does not have, and has never had, any interest in or title to the [farm]." Dkt. 2-3.

On March 25, 2012, Griswold and Wierzbicki entered into a "Settlement Agreement Contract . . . Regarding Disposition of The Real Property Asset," in which Wierzbicki agreed to transfer her interest in the farm to Griswold. Dkt. 2-5. In return, Griswold agreed to assume and pay liabilities against the property, including mortgages, and he agreed to stop prosecuting three appeals that he had initiated in cases involving him and Wierzbicki. The adversary proceedings revealed the following information about those appeals:

- Appeal No. 2011AP1958: Griswold appealed the Dane County Circuit Court July 2011 rulings in the '870 case. His appeal was initially dismissed for failure to comply with brief length rules. The court stated, "'Griswold has not provided an adequate basis for this court to allow an oversized brief in this case. Griswold has also submitted a brief which is more than twice the length permitted by statute. The argument section begins on page eighty-eight.'" *Zeddun*, ECF No. 38, at 6. Griswold's motion for reconsideration was denied on February 17, 2012. Griswold filed a petition for review with the Wisconsin Supreme Court on March 9, 2012. The bankruptcy court and parties agree that Griswold "ceased any action to pursue this appeal," but do not explain how this course of action affected the appeal. The petition for review was denied on June 12, 2012.

- Appeal No. 2011AP2172: On September 14, 2011, Griswold filed another appeal of the '870 case. From proposed findings of fact filed by Griswold in the adversarial proceeding, it appears that the subject of this appeal was the state circuit court judge's denial of a motion to recuse himself. *Zeddun*, ECF No. 30, at 5. Griswold filed a motion to voluntarily dismiss the appeal on March 28, 2012.

[5] Although this opinion encompasses two appeals filed by Griswold, all citations to this court's docket are to entries in case No. 14-cv-718-jdp, unless otherwise noted.

- Appeal No. 2011AP1510-W: Griswold sought a criminal prosecution against Wierzbicki for alleged instances of false swearing. His filings were construed as a petition for supervisory writ by the Wisconsin Court of Appeals and denied on February 29, 2012. The court concluded that "'no reasonable judge would permit this complaint [against the debtor] to be filed.'" *Zeddun*, ECF No. 38, at 5. Griswold's appeal rights had not yet expired by the time of the March 2012 agreement.

There was a fourth state case not explicitly included as consideration in the agreement but mentioned in the recitals:

> Whereas, both Laura Wierzbicki and Greg Griswold have each also determined . . . to bring closure to matters existing between Wierzbicki and Dane County Zoning arising from case 09-CX-0007 that continues to be directly adversely affecting their children's security and welfare, as will subsequently now occur because of this contract's provisions that when implemented, will finally permit closure of Wierzbicki's liabilities deriving from out of that case.

Dkt. 2-5. This refers to a zoning violation case in which Wierzbicki stipulated to a judgment requiring that certain boats and trailers be removed from the farm. *See County of Dane vs. Wierzbicki*, No. 09CX007A (Dane Cnty. Cir. Ct.).

On April 15, 2012, Griswold and Wierzbicki entered into another agreement in which Wierzbicki transferred her share of ownership over the boats and trailers to Griswold. On June 5, 2012, Wierzbicki was fined $500 for failing to comply with the judgment in the zoning violation case; she incurred this fine at least in part because she thought she no longer owned the land or the property on it. *Zeddun*, ECF No. 33, at 3-4. The boats and trailers were eventually moved off the farm at Griswold's expense. Griswold testified that he spent "in excess of $25,000" to move the vehicles and had spent $12,000 to store them as of the date of the trial. *Zeddun*, ECF No. 36, at 31. Griswold testified that if he did not move the vehicles, he "was told [the county was] going to flatten every boat on the property." *Id*. at 30.

On May 1, 2013, Wierzbicki filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code. On October 3, 2013, trustee Brenda Zeddun filed an adversary proceeding against Griswold, seeking avoidance of the March 2012 transfer under the settlement agreement as a "constructive fraudulent transfer" under the Bankruptcy Code, 11 U.S.C. § 548(a)(1)(B)(i). The trustee contended that Wierzbicki did not receive "reasonably equivalent value" in return for transferring the farm to Griswold.

The bankruptcy court held a trial, and on August 13, 2014, issued proposed findings of fact, conclusions of law, and a judgment (and later that day, an amended judgment) resolving the case. *Zeddun*, ECF No. 38-40. The court found that the estimated fair market value of the farm was $300,000, and that the farm was encumbered by three mortgages, two judgment liens, and outstanding real estate taxes. *Zeddun*, ECF No. 38, at 3. Subtracting the encumbrances, the court found that the remaining interest in the farm was worth approximately $151,697.34.[6] *Id*.

As for what Wierzbicki received in the agreement, the court found that Griswold had agreed to cease litigating the three state court appeals listed in the agreement. The court assigned zero value to the cessation of these lawsuits, stating as follows:

> For some time prior to March 25, 2012, Griswold had harassed the debtor by his abusive, persistent pro se prosecution of frivolous or meritless lawsuits against her or her property, including seemingly endless appeals. While irritating, these

[6] This amount is slightly inconsistent with the sum of the encumbrances listed in the bankruptcy court's opinion ($149,399.10). Subtracting the total encumbrances from the $300,000 value of the farm leaves $150,600.90, which is $1,096.40 less than the value stated by the bankruptcy court. Because this difference is the exact amount of outstanding real estate taxes listed by the court, I surmise that the court inadvertently failed to include this amount in the calculation. But any discrepancy in the amounts is so minor as to be immaterial to the decision.

> amateur legal efforts did not represent a material claim against the debtor's assets beyond costs of defense.
>
> Griswold exchanged nothing of material value for the interest in the farm he received by quitclaim deed.
>
> Griswold has made none of the payments on debts secured by the farm which he promised by the March, 2012 Agreement. Even if he had, after receiving the quitclaim deed on March 25, 2012, those payments would have benefitted only Griswold and not debtor or her other creditors.
>
> The debtor received nothing of material value in exchange for the quitclaim deed she delivered to Griswold. She received only the promise of cessation of some meritless appeals of state court judgments.

*Id*. at 6-7 (interior paragraph numbering omitted). The court voided the March 2012 transfer. *Id*. at 8. Griswold appeals the avoidance.

On February 11, 2015, Griswold filed a motion for contempt against creditor Peoples Community Bank in the *In re Wierzbicki* bankruptcy case. That motion was denied at a March 10, 2015 hearing. *See In re Wierzbicki*, ECF No. 118. Griswold was not allowed to present his case in that hearing; instead his motion was dismissed for his lack of standing to bring it in Wierzbicki's bankruptcy case, where he was not a party. *Id*. Griswold responded by filing a motion for Bankruptcy Judge Martin's recusal. *In re Wierzbicki*, ECF No. 110. Judge Martin summarily denied the motion for recusal in an April 22, 2015 order. *In re Wierzbicki*, ECF No. 111. Griswold now appeals that decision as well.

## ANALYSIS

This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1). The court reviews the bankruptcy court's conclusions of law *de novo*, and its findings of fact for clear error. *See Adams v. Adams*, 738 F.3d 861, 864 (7th Cir. 2013).

To prove constructive fraudulent transfer under 11 U.S.C. § 548(a)(1)(B)(i), trustee Zeddun was required to prove: (1) a transfer of Wierzbicki's property or interest in that property; (2) the transfer was made within two years of the filing of the bankruptcy petition; (3) Wierzbicki received less than reasonably equivalent value in exchange for the transfer; and (4) Wierzbicki was insolvent when the transfer was made or was rendered insolvent by the transfer. The parties stipulated that the transfer was made within two years and that Wierzbicki was insolvent. It is also undisputed that there was a transfer of Wierzbicki's interest in the farm, although the parties dispute the nature and value of that interest. The parties also dispute whether Wierzbicki received reasonably equivalent value for transferring the farm to Griswold.

**A. Wierzbicki's interest**

Griswold contends that at the time of the March 2012 settlement agreement, Wierzbicki did not actually have an interest in the farm, and thus there was nothing that could have been transferred, fraudulently or otherwise. In Griswold's brief, he refers to Wierzbicki's interest at the time of the March 2012 agreement as "just mere inchoate bare legal title," and suggests that he was the rightful owner of the property at the time of the agreement, *See* Dkt. 3, at 46-48. This argument makes little sense given the terms of the March 2012 settlement agreement, in which the parties clearly assume that Wierzbicki does have an interest in the property. But in any event, the bankruptcy court and this court are precluded from ruling that Griswold was the rightful owner before March 2012, because the state court has already ruled on that issue.

As the bankruptcy court noted at trial and in its judgment, the Dane County Circuit Court conclusively ruled in its case no. 09CV870 that Griswold's earlier attempt at gaining

ownership over the farm was void, Griswold never had ownership over the farm, and Wierzbicki was the sole owner. *See* Dkt. 2-2, 2-3; *see also Zeddun*, ECF No. 36, at 15-17. At the trial of the adversary action, the bankruptcy court considered Griswold's argument about ownership of the farm to be barred by the *Rooker-Feldman* doctrine, which precludes federal district courts from reviewing state-court judgments. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

I agree with the bankruptcy court's conclusion that Griswold cannot challenge ownership of the farm to the extent that it would conflict with the previous state court judgment, but for a slightly different reason. The *Rooker-Feldman* doctrine would not bar Griswold's defensive argument, because the doctrine is not an offensive tool to be used against a party defending itself against claims brought in federal court, such as the claims brought by Zeddun in the adversary proceeding here. *See Centres, Inc. v. Town of Brookfield, Wis.*, 148 F.3d 699, 702 (7th Cir. 1998) (federal courts applying the doctrine consider "whether the injury alleged by the federal *plaintiff* resulted from the state court judgment itself or is distinct from that judgment") (emphasis added).

I conclude instead that Griswold's argument is foreclosed by the principle of issue preclusion. A state court judgment is entitled to the same preclusive effect in federal court as that judgment would have in state court. *Allen v. McCurry*, 449 U.S. 90, 96 (1980). Under Wisconsin law, "issue preclusion . . . is a doctrine designed to limit the relitigation of issues that have been contested in a previous action between the same or different parties." *Michelle T. v. Crozier*, 173 Wis. 2d 681, 687, 495 N.W.2d 327, 329 (1993). Issue preclusion applies when two criteria are met. The first requires that "the question of fact or law that is sought to be precluded actually must have been litigated in a previous action and [have been] necessary

to the judgment." *Mrozek v. Intra Fin. Corp.*, 2005 WI 73, ¶ 17, 281 Wis. 2d 448, 699 N.W.2d 54. The question here, whether Wierzbicki, Griswold, or both, owned the farm prior to the state court's judgment, was clearly litigated in the state court and that determination was necessary to the judgment adjudicating the parties' property rights in that case.

The second criterion requires the court to "determine whether it is fundamentally fair to employ issue preclusion given the circumstances of the particular case at hand." *Id*. Wisconsin courts have replaced formalistic requirements with "a looser, equities-based interpretation of the doctrine." *Michelle T.*, 495 N.W. 2d at 330. Relevant factors for this criterion include: (1) the availability of review of the first judgment; (2) shifts in the relevant law; (3) differences in the quality or extensiveness of the proceedings; (4) shifts in the burden of persuasion making it more difficult for the party seeking preclusion to prevail in the second action; and (5) the adequacy of the loser's incentive to obtain a full and fair adjudication of the issue. *Id*. I conclude that there is nothing unfair about holding Griswold to the state court's determination of the farm's ownership. Griswold squandered the opportunity for review of the state court proceeding by failing to comply with appellate briefing rules. There have been no shifts in the relevant law or in the burden of persuasion—Wierzbicki carried her burden to show slander of title in the state court action. There is no reason to question the quality or extensiveness of the state court litigation. Griswold had the incentive to obtain a full and fair adjudication of the issue in state court. The bottom line is that Griswold had a full and fair chance to establish ownership of the property in state court, and he is precluded from trying to undo that decision here.

Griswold also argues that he gained some interest in the farm after the state court's ruling, but before the March 2012 agreement, by virtue of raising his family on the farm,

Dkt. 3, at 30-31, or "by the conduct of the parties," *id*. at 47-48. He cites to cases stating that "Wisconsin courts have consistently considered the owner of real property to be the party which has the beneficial interest in the property and not the party which merely has bare legal title." *Swanson v. Stoffregen* (*In re Stoffregen*), 206 B.R. 939, 942 (Bankr. E.D. Wis. 1997); *see also Milwaukee v. Greenberg*, 163 Wis. 2d 28, 41, 471 N.W.2d 33, 38 (Wis. Ct. App. 1991). But this principle applies to situations in which the party claiming the "beneficial interest" already has at least partial legal ownership of the property. *See In re Stoffregen*, 206 B.R. at 942 (co-owner of property who had received only bare legal interest from co-owner mother deemed to not have "cognizable" ownership interest); *Greenberg*, 471 N.W.2d at 39 (true owner of real estate under transfer by land contract was vendee rather than vendor, even though vendor retained bare legal title). This is not the case in this lawsuit. Given the previous state court judgment, Griswold never obtained any share of legal title over the farm. He suggests that he has a property interest because Wierzbicki invited him to live with her at the farm, Dkt. 3, at 47, but this fundamentally misunderstands how ownership interests in real estate are created or transferred. There are no principles of Wisconsin law that allow Griswold to claim an interest in the farm or discount Wierzbicki's interest in it: Wierzbicki owned the farm when she entered the 2012 settlement agreement.

**B. Reasonably equivalent value**

The Bankruptcy Code allows a trustee to avoid a transfer if, among other factors not in dispute here, the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation." 11 U.S.C. § 548(a)(1)(B)(i). To determine whether a debtor has received reasonably equivalent value, a reviewing court must determine the value of what was transferred and compare that value to the value the debtor received. *See Creditor's Comm. of*

*Jumer's Castle Lodge, Inc. v. Jumer*, 472 F.3d 943, 947 (7th Cir. 2007). The determination of whether a debtor received reasonably equivalent value in exchange for a transfer does not require a dollar-for-dollar equivalency. *Barber v. Golden Seed Co., Inc.*, 129 F.3d 382, 387 (7th Cir. 1997). Whether reasonably equivalent value has been received is a question of fact, *id.*, as is the question about the value a party received in an individual component of the overall transaction, *In re Xonics Photochem., Inc.*, 841 F.2d 198, 202 (7th Cir. 1988) (whether a corporation received a benefit from a guarantee is a question of fact).

Griswold contends that the bankruptcy court erred in several ways in this analysis. First, he argues that the farm was encumbered in various ways so as to bring the real value of the farm to zero. He argues that the farm is encumbered by a *lis pendens* he had filed against the farm in 2009, but this argument runs into the same issue preclusion problem as his argument about Wierzbicki's "inchoate" interest: the state court concluded that Griswold had no property interest in the farm. Therefore, Griswold's *lis pendens* was worthless, and the bankruptcy court's failure to include it as an encumbrance was not an error.

Griswold also argues that the value of the farm was greatly diminished by homestead exemptions that he and Wierzbicki held.[7] I understand Griswold to argue that the value of the farm was essentially zero because both he and Wierzbicki had $75,000 exemptions under Wisconsin law, and the $150,000 total exemption ate away the remaining value of the property after accounting for the other encumbrances. *See* Wis. Stat. § 815.20 ("The exemption extends to land owned by husband and wife jointly or in common or as marital

[7] He also seems to argue that their children have homestead interests in the farm, Dkt. 3, at 29, 66, or due process rights "to have also enjoyed the benefits of each parent's homestead exemptions," *id*. at 19, but these severely underdeveloped arguments need not be considered by the court. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) (explaining that perfunctory and undeveloped arguments are considered waived).

property, and each spouse may claim a homestead exemption of not more than $75,000."). However, this interpretation is contrary to the language of § 815.20 (Griswold and Wierzbicki were *not* married) and the state court's ruling. As explained above, Griswold held no interest in the farm. So there was, at maximum, one $75,000 homestead exemption in play: Wierzbicki's, which would have transferred to Griswold when he became owner of the farm.

However, the bankruptcy court concluded that neither Griswold nor Wierzbicki could claim a homestead interest in the farm for purposes of the avoidance: Wierzbicki waived her exemption by voluntarily transferring the property to Griswold, and Griswold was not entitled to an exemption because the property was acquired by the fraudulent transfer, *see Sullivan v. Welsh* (*In re Lumbar*), 457 B.R. 748, 754 (B.A.P. 8th Cir. 2011) ("Indeed, § 522(g) of the Code provides that, if a trustee recovers property under § 550, including property which was fraudulently transferred, the debtor may claim an exemption in the recovered property *unless* the transfer by the debtor was a voluntary one.") (emphasis in original); *Fox v. Smoker* (*In re Noblit*), 72 F.3d 757, 758 (9th Cir. 1995) (majority of courts have concluded that "exemption is provided only for the benefit of the debtor. If the exempt property is transferred, the debtor has in essence waived the exemption, and the transferee cannot avail herself of the exemption in a subsequent avoidance action.") (citation omitted). Griswold does not provide a persuasive argument that the bankruptcy court was incorrect in making these rulings. But even had the bankruptcy court erred by not counting the $75,000 homestead exemption as an encumbrance, the calculation would not be materially different. Instead of transferring property worth about $150,000 for next to nothing, Wierzbicki would

have transferred property worth $75,000 for next to nothing. Either way, Wierzbicki gave up property of significant value.

That leaves the valuation of the assets Wierzbicki received in return. The main benefit identified by Griswold is his promise to drop three state court appeals. The bankruptcy court considered the value of this promise to be essentially zero. The bankruptcy court's assessment of the value of the dropped appeals was not clearly erroneous.

I understand Griswold to argue that there was value in Wierzbicki essentially insuring herself against the value she would lose (at least some of her ownership stake in the farm) if Griswold prevailed on his appeals, by receiving Griswold's guarantee to drop the appeals. Griswold analogizes the facts in issue here to *Allard v. Flamingo Hilton* (*In re Chomakos*), 69 F.3d 769, 770-71 (6th Cir. 1995), a case in which the court ruled that a debtor's gambling losses were reasonably equivalent to the dollar value of the debtor's "chance of winning." I agree with the reasoning of the *Chomakos* court that the correct valuation of a contingent interest should take into account the risks of success or failure. *See also Cooper v. Ashley Commc'ns* (*In re Morris Commc'ns NC, Inc.*), 914 F.2d 458, 474-75 (4th Cir. 1990) (debtor's transfer of stock for low cash amount still reasonably equivalent because value of company at time of transfer depended on slim chance of winning lottery for Federal Communications Commission license).

However, applying that concept to the uncertainty here—Wierzbicki's chances of losing the litigation over ownership of the farm—is not helpful to Griswold. As the *Chomakos* court stated, "The existence of an economic value may be immaterial, however, if the dollar value of the gambler's chance of winning—augmented, perhaps, by an element of entertainment value—is not 'reasonably equivalent' to the amount of money wagered." 69

F.3d at 771. In the gambling example, the gambler's low odds are balanced against a larger prize than the amount wagered. The actuarial values of payouts on individual bets at a casino are generally quite close to the amount wagered because the casino takes only a small percent of the total wagered for its costs and profits.

Here, Wierzbicki avoided "gambling" her ownership of the farm on the outcome of an appellate decision, but the cost to her was *giving up the farm anyway*. That is, she avoided the worst-case scenario (paying litigation costs, fretting over uncertainty, and then losing the farm), by accepting a very-close-to-worst-case scenario (losing the farm), even though she had already won at the circuit court. The odds of her losing an appeal would have to be quite high to justify a finding of reasonable equivalency in this type of transfer. Based on his knowledge of the circumstances of this case, the bankruptcy judge concluded that Griswold's appeals had no real merit. In short, he found that they were very bad bets, a finding that is not clearly erroneous.

Griswold also states that there is value in "preserv[ing] the property for the benefit of their 3 dependent minor children," Dkt. 3, at 4, but it is unclear what this means. Whether Griswold or Wierzbicki owned the farm, the children would benefit from one of their parents owning it. If Griswold believes there was value to the family in avoiding further conflict,[8] courts applying similar fraudulent transfer language have determined that this type of benefit is too nebulous to support a finding of reasonable equivalence. *See Hinsley v. Boudloche* (*In re Hinsley*), 201 F.3d 638, 642-43 (5th Cir. 2000) (applying the Texas Uniform Fraudulent

[8] Griswold states, "The 'circumstance' affecting the Wierzbicki/Griswold 'family', was the toll being undertaken upon both parents, bludgeoning themselves to have the outcome prospect be acquired consisting of absolutely nothing other than a purely pyrrhic victory, and as importantly, how THAT sheer destruction was directly affecting their 3 minor dependent children." Dkt. 3, at 24.

Transfer Act, noting that "[i]ntangible, non-economic benefits, such as preservation of marriage, do not constitute reasonably equivalent value."); *Dietz v. St. Edward's Catholic Church* (*In re Bargfrede*), 117 F.3d 1078, 1080 (8th Cir. 1997) (applying § 548, stating that "[t]o the extent [the debtor] received indirect, non-economic benefits in the form of a release of a possible burden on the marital relationship and the preservation of the family relationship, we find these sufficiently analogous to other intangible, psychological benefits to conclude that they do not constitute reasonably equivalent value.").

Finally, Griswold argues that Wierzbicki gained the benefit of no longer being involved in zoning violation litigation with Dane County over the storage of boats and trailers on the farm. More specifically, he states that the agreement "limit[ed] her exponentially increasing exposure to contempt . . . fines pending in Dane County Zoning's litigation," Dkt. 3, at 52, and "extinguish[ed] Wierzbicki's then pending liabilities to Dane County Zoning for their seeking contempt," *id*. at 8.

This zoning violation issue was not mentioned in the bankruptcy court's order, perhaps understandably so. The zoning violation case was not included as one of the enumerated obligations Griswold agreed to assume as consideration in that agreement, or as consideration in the stipulated findings of fact the parties provided to the court, *Zeddun*, ECF No. 33, at 4, although the case was mentioned in the recitals of the agreement, in the stipulated proposed findings, and at trial. It may well be that the bankruptcy judge thought either that Wierzbicki's removal from the zoning violation litigation was not part of the contract, or that it was of no real value to Wierzbicki even if it was part of the consideration. Even assuming that the bankruptcy judge erroneously failed to consider the value of the zoning violation litigation, I conclude that such an error is harmless because the value of that

zoning litigation comes nowhere close to closing the gap in the "reasonably equivalent" analysis.

Griswold seems to suggest that the benefit to Wierzbicki was avoiding progressively harsher forfeitures or contempt fines and enjoying the subsequent peace of mind. As discussed above, an intangible benefit such as peace of mind over impending litigation is not "value" for purposes of the "reasonably equivalent" analysis. Besides, Wierzbicki actually ended up being fined $500 after she transferred the farm to Griswold.

The value of avoiding further forfeitures or fines is more tangible, but there was no evidence in the record that Griswold was fined after the transfer. The obvious solution to avoid court fines or forfeitures would be to comply with the court's order, which Griswold ultimately did. Griswold states that he incurred expenses "in excess of $25,000" to move the boats and trailers, and an additional $12,000 in storage fees by the time of trial. *Zeddun*, ECF No. 36, at 31. But it is unclear why Griswold thinks that these costs would have been Wierzbicki's responsibility because she was the owner of the *farm*. Had she not transferred the farm to Griswold, she might have been on the hook for moving and storage fees, but only because, at the time of the transfer, she had at least partial ownership of the boats and trailers themselves. In a worst-case scenario, if the owner of the boats would not pay to move the vehicles, Griswold seems to believe that Dane County would have "flatten[ed] every boat on the property." *Id*. at 30. Even assuming that the cost of having the county destroy the vehicles would be passed on to the owner of the farm (as opposed to the owner of the vehicles), it is simply not plausible that such a cost could come anywhere close to the value of the farm itself.

In sum, Griswold fails to show any material error in the bankruptcy court's "reasonably equivalent" analysis. I must affirm the bankruptcy court's judgment because it is not clearly erroneous.[9]

### C. Appeal of order denying motion for recusal

Griswold has filed a separate appeal from the order in the bankruptcy case denying his motion for Bankruptcy Judge Martin's recusal. The caption of this second appeal includes the case numbers from the bankruptcy proceeding as well as Griswold's adversarial proceeding against Zeddun. For the sake of efficiency, I will address the second appeal in this order.[10]

This is an appeal from an interlocutory order of the bankruptcy court. Although Griswold does not formally ask for leave to take this interlocutory appeal, I will construe his notice of appeal as including such a request. Thus, I have jurisdiction over this appeal under 28 U.S.C. § 158(a)(3) ("The district courts of the United States shall have jurisdiction to hear appeals . . . with leave of the court, from other interlocutory orders and decrees").

In this context, district courts generally apply the standard set forth in 28 U.S.C. § 1292(b), which governs interlocutory appeals from the district court to the court of appeals. *See, e.g.*, *In re Barfield*, No. 15-3131, 2015 WL 4254028, at *4 (C.D. Ill. July 14, 2015); *In re Capen Wholesale, Inc.*, 184 B.R. 547, 549 (N.D. Ill. 1995). Under that test, an interlocutory appeal is appropriate when it involves a controlling question of law over which there is a

---

[9] Griswold has also filed a motion to stay the bankruptcy court judgment pending resolution of this appeal, Dkt. 9. I will deny that motion as moot.

[10] Griswold contends that his arguments regarding the second appeal should be deemed admitted because none of the other parties responded to his brief. This is partly due to the unusual posture of this appeal and to Griswold's failure to name an appellee in the caption. In any event, I will not accept Griswold's arguments and force Judge Martin's recusal solely due to the lack of opposition brief. I will address the merits of Griswold's arguments.

substantial ground for difference of opinion, and an immediate appeal from the order may materially advance the termination of the litigation. § 1292(b); *Trustee of Jartran, Inc. v. Winston & Strawn*, 208 B.R. 898, 900 (N.D. Ill. 1997). Griswold's motion for recusal comes nowhere close to meeting that standard. There is not a substantial ground for difference of opinion on the question whether Judge Martin should have recused himself. Griswold believes that he should have been given an opportunity to be heard during the hearing on his motion for contempt, but Judge Martin determined that Griswold simply did not have standing to bring that motion in Wierzbicki's bankruptcy proceeding. That adverse ruling does not call into question Judge Martin's impartiality, even if Judge Martin expressed irritation with Griswold's attempts to insert himself into Wierzbicki's bankruptcy proceeding. Griswold does not suggest any other basis for Judge Martin's recusal. Accordingly, I will not grant Griswold leave to pursue this interlocutory appeal.

As part of this appeal, Griswold filed a motion to stay eviction proceedings in the Dane County Circuit Court. Dkt. 9 in the '250 case. That motion will be denied as moot because I have decided this appeal.

ORDER

IT IS ORDERED that:

1. In case no. 14-cv-718-jdp, the bankruptcy court's August 13, 2014 judgment is AFFIRMED.

2. Griswold's motion to stay the judgment pending resolution of this appeal, Dkt. 9 in the '718 case, is DENIED as moot.

3. In case no. 15-cv-250-jdp, Griswold's motion for leave to take an interlocutory appeal from the bankruptcy court's April 22, 2015 order denying his motion for recusal is DENIED.

4. Griswold's motion to stay eviction proceedings, Dkt. 9 in the '250 case, is DENIED as moot.

5. The clerk of court is directed to close both cases.

Entered September 15, 2015.

BY THE COURT:

/s/

JAMES D. PETERSON
District Judge